IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| CATHERINE SANDERS, surviving spouse of Charles E. Sanders, deceased, and on behalf of the wrongful death beneficiaries of Charles E. Sanders, | ) ) ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) )   No. 2:20-cv-02001 |
| ALLENBROOKE NURSING AND REHABILITATION CENTER, LLC, d/b/a ALLENBROOKE NURSING AND REHABILITATION CENTER; AURORA CARES, LLC; DTD HC, LLC; D&N, LLC; DONALD T. DENZ; and NORBERT A. BENNETT, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

ORDER

This is a health care liability suit alleging wrongful death. Before the Court is Defendants Aurora Cares, LLC ("Aurora Cares"); DTD HC, LLC ("DTD"); D&N, LLC ("D&N"); Donald T. Denz; and Norbert A. Bennett's (collectively, the "Non-Facility Defendants") March 6, 2020 Motion to Dismiss. (ECF No. 16.) Plaintiff Catherine Sanders ("Catherine" or "Sanders"), surviving spouse of Charles E. Sanders, and on behalf of the wrongful death beneficiaries of Charles E. Sanders, responded on

April 3, 2020.  (ECF No. 27.)  Non-Facility Defendants replied on April 17, 2020.  (ECF No. 32.)

For the following reasons, Non-Facility Defendants' Motion to Dismiss is DENIED.

## I.  Background

Allenbrooke Nursing and Rehabilitation Center, LLC ("Allenbrooke") is a nursing home facility in Memphis, Tennessee and is a Tennessee limited liability company (an "LLC").  (ECF No. 44 ¶ 6.)  Aurora Cares is a New York LLC.  (Id. ¶ 8.)  The members of Allenbrooke and Aurora Cares are DTD and D&N.  (Id. ¶¶ 7, 9.)  DTD and D&N are New York LLCs.  (Id. ¶¶ 10, 13.) Donald T. Denz is a member of DTD.  (Id. ¶ 14.)  Norbert A. Bennett is a member of D&N.  (Id. ¶ 11.)

Charles E. Sanders ("Charles") was a resident of Allenbrooke from about December 7, 2018, to January 2, 2019.  (ECF No. 1 ¶ 2.)  On or around January 2, 2019, Charles was transferred from Allenbrooke to St. Francis Hospital.  (Id.)  On January 4, 2019, Charles died at the hospital.  (Id.)

On January 3, 2020, Catherine filed the Complaint in this action.  (ECF No. 1.)  As Charles's surviving spouse, and on behalf of Charles's wrongful death beneficiaries, Catherine asserts claims against Defendants for statutory negligence under the Tennessee Health Care Liability Act ("THCLA"), Tenn. Code

Ann. §§ 29-26-101, et seq.; common law negligence; and survival
and wrongful death.  (See id. ¶¶ 40-63.)

On March 6, 2020, Non-Facility Defendants filed the Motion
to Dismiss.  (ECF No. 16.)  Non-Facility Defendants assert that
the Court does not have personal jurisdiction over them.  (ECF
No. 16-1 at 7-13.)  Non-Facility Defendants also assert that
Sanders fails to state a claim for which relief can be granted
because: (1) the THCLA prohibits Sanders from pursuing health
care liability claims against Non-Facility Defendants; (2) the
Tennessee courts have established that DTD, D&N, Denz, and
Bennett cannot be held directly or vicariously liable for the
actions of Aurora Cares or Allenbrooke; (3) there can be no
personal liability for an owner, officer, or member of a
Tennessee LLC; and (4) there can be no personal liability for a
member or agent of a New York LLC.  (Id. at 13-20.)

## II.  Jurisdiction and Choice of Law

The Court has diversity jurisdiction.  28 U.S.C. § 1332.
The amount in controversy exceeds $75,000.  Sanders seeks
compensatory and punitive damages for negligence and survival
and wrongful death claims against multiple defendants.  (ECF No.
1 ¶¶ 46, 56, 58-66.)

The parties are completely diverse.  Catherine Sanders is
a resident citizen of Tennessee.  (ECF No. 44 ¶ 2.)  None of the
Defendants is a citizen of Tennessee.  Allenbrooke is a Tennessee

LLC.   (Id. ¶ 6.)   Aurora Cares is a New York LLC.   (Id. ¶ 8.)
For purposes of diversity jurisdiction, LLCs have the citizenship
of each of their members.   Americold Realty Tr. v. Conagra Foods,
Inc., 136 S. Ct. 1012, 1015 (2016) (citing Carden v. Arkoma
Assocs., 494 U.S. 185, 195-96 (1990)); accord Delay v. Rosenthal
Collins Grp., LLC, 585 F.3d 1003, 1005 (6th Cir. 2009).   The
members of Allenbrooke and Aurora Cares are DTD and D&N.   (ECF
No. 44 ¶¶ 7, 9.)   DTD and D&N are New York LLCs.   (Id. ¶¶ 10,
13.)   DTD's members are Donald T. Denz and the Donald T. Denz
Irrevocable Trust.   (Id. ¶ 14.)   Donald T. Denz is a resident
citizen of New York.   (Id. ¶ 17.)   The citizenship of a
traditional trust is that of its trustee.   See GBForefront, L.P.
v. Forefront Mgmt. Grp., LLC, 888 F.3d 29, 38-40 (3d Cir. 2018).
The trustee of the Donald T. Denz Irrevocable Trust is Martin
Clifford, who is a resident citizen of New York.   (ECF No. 44
¶ 15.)   D&N's members are Norbert A. Bennett, the Norbert A.
Bennett Children's Trust, and the Norbert A. Bennett
Grandchildren's Trust.   (Id. ¶ 11.)   Norbert A. Bennett is a
resident citizen of New York.   (Id. ¶ 17.)   The trustee of the
Norbert A. Bennett Children's Trust and the Norbert A. Bennett
Grandchildren's Trust is Ronald Bennett, who is a resident
citizen of New York.   (Id. ¶ 12.)

The Court has diversity jurisdiction because the parties are completely diverse and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332.

Federal courts sitting in diversity apply state law to issues of substantive law and federal law to procedural issues. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78-80 (1938); see also Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996). When there is no dispute that a certain state's substantive law applies, the court need not conduct a choice-of-law analysis sua sponte.  See GJB Corp. v. E. Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998).  The parties assume that Tennessee substantive law governs Sanders's claims.  The Court applies Tennessee substantive law.

## III. Legal Standards

### A.   Personal Jurisdiction

When a defendant challenges personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, "[t]he plaintiff bears the burden of making a prima facie showing of the court's personal jurisdiction over the defendant."  Intera Corp. v. Henderson, 428 F.3d 605, 615 (6th Cir. 2005); see also Malone v. Stanley Black & Decker, Inc., 965 F.3d 499, 504 (6th Cir. 2020).  A plaintiff "can meet this burden by 'establishing with reasonable particularity sufficient contacts between [defendants] and the forum state to support jurisdiction.'"

5

Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th
Cir. 2002) (quoting Provident Nat'l Bank v. Cal. Fed. Sav. Loan
Ass'n, 819 F.2d 434, 437 (3d Cir. 1987)).  If the plaintiff meets
her burden, the motion to dismiss should be denied,
"'notwithstanding any controverting presentation by the moving
party.'" Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212,
1214 (6th Cir. 1989) (quoting Marine Midland Bank, N.A. v.
Miller, 664 F.2d 899, 904 (2d Cir. 1981)).  Because the Court is
relying solely on written submissions to resolve the Motion to
Dismiss, rather than an evidentiary hearing or jurisdictional
discovery, Sanders's burden to establish a prima facie showing
of personal jurisdiction is "'relatively slight.'" Air Prods.
& Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 549 (6th
Cir. 2007) (quoting Am. Greetings Corp. v. Cohn, 839 F.2d 1164,
1169 (6th Cir. 1988)); see also Dean v. Motel 6 Operating L.P.,
134 F.3d 1269, 1272 (6th Cir. 1998) ("relatively light").  The
Court construes the facts in the light most favorable to Sanders.
See Air Prods., 503 F.3d at 549.

When considering a motion to dismiss for lack of personal
jurisdiction, a federal court looks first to the long-arm statute
of the state in which it sits to determine the state's
limitations on personal jurisdiction. Aristech Chem. Int'l Ltd.
v. Acrylic Fabricators Ltd., 138 F.3d 624, 627 (6th Cir. 1998).
The court then assesses whether the exercise of personal

6

jurisdiction would be appropriate under the Due Process Clause of the Fourteenth Amendment.  Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002); CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996).  If the exercise of jurisdiction is not appropriate under the Due Process Clause, the exercise of jurisdiction is "foreclose[d] . . . even where a properly construed provision of the long-arm statute would otherwise permit it."  Theunissen v. Matthews, 935 F.2d 1454, 1459 (6th Cir. 1991).

**B.   Failure to State a Claim**

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted."  A Rule 12(b)(6) motion permits the "defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true."  Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993) (citing Nishiyama v. Dickson Cnty., 814 F.2d 277, 279 (6th Cir. 1987)).  A motion to dismiss tests only whether the plaintiff has pled a cognizable claim and allows the court to dismiss meritless cases that would waste judicial resources and result in unnecessary discovery.  See Brown v. City of Memphis, 440 F. Supp. 2d 868, 872 (W.D. Tenn. 2006).

When evaluating a motion to dismiss for failure to state a claim, the Court must determine whether the complaint alleges

"sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The "'[f]actual allegations must be enough to raise a right to relief above [a] speculative level.'" Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Twombly, 550 U.S. at 555).

A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). A complaint need not contain detailed factual allegations. However, a plaintiff's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

"When reviewing a motion to dismiss, the district court may not consider matters beyond the complaint." Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 613 (6th Cir. 2009). "If the district court does consider evidence outside the complaint, it effectively converts the motion to dismiss to a motion for summary judgment." Id. (quotation marks and citations omitted). The Sixth Circuit generally takes "a liberal view of what matters fall within the pleadings for purposes of" a motion to dismiss. Armengau v. Cline, 7 F. App'x 336, 344 (6th Cir. 2001). That

does not mean that a court must or may consider any and all
materials the parties submit.  Documents attached to a motion to
dismiss may be considered part of the pleadings if they are
"referred to in a complaint and central to the claim."  Id.
(citing Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir.
1999)); see also Bassett v. NCAA, 528 F.3d 426, 430 (6th Cir.
2008).

## IV.  Analysis

### A.    Personal Jurisdiction

Non-Facility Defendants assert that the Court lacks
personal jurisdiction over them.  (ECF No. 16-1 at 7-13.)

A federal court sitting in diversity must apply the law of
the forum state to determine whether it may exercise jurisdiction
over the person of a non-resident defendant.  Welsh v. Gibbs,
631 F.2d 436, 439 (6th Cir. 1980).  The jurisdictional limits of
Tennessee law and federal due process are coterminous.  See
Parker v. Winwood, 938 F.3d 833, 839 (6th Cir. 2019); First Cmty.
Bank, N.A. v. First Tenn. Bank, N.A., 489 S.W.3d 369, 384 (Tenn.
2015).  The Court need only decide whether exercising personal
jurisdiction over Non-Facility Defendants is consistent with
federal due process requirements.  See Bridgeport Music, Inc. v.
Still N The Water Publ'g, 327 F.3d 472, 477 (6th Cir. 2003).

The Due Process Clause of the Fourteenth Amendment requires
that a non-resident defendant have "certain minimum contacts

with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"   Youn v. Track, Inc., 324 F.3d 409, 417 (6th Cir. 2003) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  "There are two kinds of personal jurisdiction within the Federal Due Process inquiry: (1) general personal jurisdiction, where the suit does not arise from defendant's contacts with the forum state; and (2) specific jurisdiction, where the suit does arise from the defendant's contacts with the forum state."  Conn v. Zakharov, 667 F.3d 705, 712-13 (6th Cir. 2012).

General jurisdiction allows a plaintiff to sue a defendant "on any and all claims," regardless of the connection (or lack thereof) between the claim and the forum.  Maxitrate Tratamento Termico E Controles v. Super Sys., Inc., 617 F. App'x 406, 408 (6th Cir. 2015) (citing Daimler AG v. Bauman, 134 S. Ct. 746, 754 (2014)).  Specific jurisdiction "exposes the defendant to suit in the forum state only on claims that 'arise out of or relate to' a defendant's contacts with the forum."  Kerry Steel, Inc. v. Paragon Indus., Inc., 106 F.3d 147, 149 (6th Cir. 1997) (quoting Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414-15 & nn.8-10 (1984)).

Sanders concedes that the Court does not have general jurisdiction over Non-Facility Defendants.  (See ECF No. 27 at

10-17.)  To conform with the requirements of federal due process, the Court must have specific jurisdiction over Non-Facility Defendants.  Conn, 667 F.3d at 712-13.  Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation."  Walden v. Fiore, 571 U.S. 277, 283-84 (2014) (quotation marks and citations omitted).  The Sixth Circuit has established a three-part test for determining whether there is specific jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

S. Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968); see also AlixPartners, LLP v. Brewington, 836 F.3d 543, 549-50 (6th Cir. 2016).  The Court must have personal jurisdiction over each defendant as to each asserted claim.  See Rush v. Savchuk, 444 U.S. 320, 331-32 (1980); Hosp. Auth. of Metro. Gov't of Nashville v. Momenta Pharms., Inc., 353 F. Supp. 3d 678, 690 (M.D. Tenn. 2018) (citing Bd. of Forensic Document Exam'rs, Inc. v. ABA, No. 16-cv-2641, 2017 WL 549031, at *3 (W.D. Tenn. Feb. 9, 2017)).

The relationship among the Non-Facility Defendants is an illustrative starting point.  See Hatfield v. Allenbrooke Nursing

& Rehab. Ctr., LLC, No. W2017-00957-COA-R3-CV, 2018 WL 3740565, at *30 (Tenn. Ct. App. Aug. 6, 2018) (detailing the relationship among Non-Facility Defendants and Allenbrooke).  DTD and D&N are New York LLCs.  (ECF No. 16-3 ¶ 28; ECF No. 16-4 ¶ 28.)  Each entity maintains a fifty percent membership interest in Allenbrooke.  (ECF No. 16-3 ¶ 29; ECF No. 16-4 ¶ 29.)  Each maintains a fifty percent membership interest in Aurora Cares, a New York LLC.  (ECF No. 1 ¶¶ 6-7; ECF No. 16-3 ¶ 9; ECF No. 16-4 ¶ 9.)  Aurora Cares provides administrative support services to nursing homes across the country, including Allenbrooke.  (ECF No. 16-3 ¶ 10; ECF No. 16-4 ¶ 10.)  Neither DTD nor D&N has employees or agents in Tennessee.  (ECF No. 16-3 ¶ 34; ECF No. 16-4 ¶ 34.)  Denz is the manager and majority member of DTD.  (ECF No. 1 ¶ 8; ECF No. 16-3 ¶ 27.)  Denz is the Co-Chief Executive Officer and Chief Financial Officer of Aurora Cares.  (ECF No. 16-3 ¶ 9.)  Bennett is the manager and majority member of D&N.  (ECF No. 1 ¶ 9; ECF No. 16-4 ¶ 27.)  Bennett is the Co-Chief Executive Officer of Aurora Cares.  (ECF No. 16-4 ¶ 9.)

### 1.  Aurora Cares

To establish that the Court has personal jurisdiction over Aurora Cares, Sanders must show that Aurora Cares "purposefully avail[ed]" itself of "the privilege of acting in the forum state or causing a consequence in the forum state."  Mohasco, 401 F.2d at 381.  An entity purposefully avails itself when it "create[s]

12

'continuing obligations' between [it]self and residents of the forum." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985) (citing Travelers Health Ass'n v. Virginia ex rel. State Corp. Comm'n, 339 U.S. 643, 648 (1950)). Although a physical presence is not required to assert jurisdiction, it "will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there." Id.

Sanders has pled that Aurora Cares is the management company of Allenbrooke and that Aurora Cares conducts business related to the "operation, management, and/or control of Allenbrooke." (ECF No. 1 ¶ 5.) Non-Facility Defendants submit declarations from Denz and Bennett that state, in relevant part, that "Aurora Cares provides administrative support services to more than 30 nursing homes around the country, including Allenbrooke . . . pursuant to an administrative services agreement between Allenbrooke and Aurora Cares." (ECF No. 16-3 ¶ 10; ECF No. 16-4 ¶ 10.) Two of the nursing homes Aurora Cares provides services to are in Tennessee. (ECF No. 16-3 ¶ 10; ECF No. 16-4 ¶ 10.) Denz, as Co-CEO and CFO of Aurora Cares, states that he "ha[s] occasionally traveled to Tennessee . . . to ensure that all of the services provided under the administrative services agreement between Allenbrooke and Aurora Cares are performed to the facility's satisfaction." (ECF No. 16-3 ¶ 13.) Bennett, as

13

Co-CEO of Aurora Cares, states the same for his part. (ECF No. 16-4 ¶ 13.)

Aurora Cares has purposefully availed itself of the privilege of acting in Tennessee. Its "substantial connection" with Tennessee is its "avail[ment] [] of the privilege of conducting business" by creating "continuing obligations" with Allenbrooke and another nursing home in Tennessee. Burger King, 471 U.S. at 475-76; see Air Prods., 503 F.3d at 551 (holding that defendants purposefully availed themselves of a forum when they entered into "a continuing business relationship that lasted a period of many years"). Aurora Cares' officers' travels to Tennessee to ensure that its contractual obligations were being carried out were not "random," "fortuitous," or "attenuated" contacts with Tennessee. Burger King, 471 U.S. at 475. Those contacts increased the foreseeability that Aurora Cares would be subject to suit in Tennessee. Id. The first Mohasco requirement is satisfied. 401 F.2d at 381.

Sanders must show that her causes of action arose from Aurora Cares' activities in Tennessee. Id. A plaintiff's causes of action arise from a defendant's activities in a forum if the "causes of action were 'made possible by' or 'lie in the wake of' the defendant's contacts, or [if] the causes of action are 'related to' or 'connected with' the defendant's contacts with the forum state." Air Prods., 503 F.3d at 553 (citations

omitted).  "[T]his standard [i]s a 'lenient standard' and . . .
the cause of action need not 'formally' arise from defendant's
contacts."   Id. (quoting Bird, 289 F.3d at 875).

Sanders has submitted evidence that Aurora Cares "provides
support services including purchasing, financial statement and
cost report preparation, payroll, accounts receivable and
payable functions for [Allenbrooke]."  (ECF No. 27-4 at 13.)  In
their declarations, Denz and Bennett assert that "Aurora Cares
does not hire or fire the administrator or other management
employees of Allenbrooke; it does not control or have control
over staffing levels at Allenbrooke; it does not control the
budget and expenditures of Allenbrooke; and it does not implement
and enforce the policies and procedures of Allenbrooke."  (ECF
No. 16-3 ¶ 11; ECF No. 16-4 ¶ 11.)

Sanders's claims rely on the theory that Charles's injuries
were due to Allenbrooke's lack of staff, staff training, staff
monitoring, and resources; failure to adopt and follow proper
rules, regulations, policies, plans, and guidelines; and,
overall, Allenbrooke's failure to provide a safe environment.
(See ECF No. 1 ¶¶ 44(a)-(w), 51(a)-(h).)  Sanders has submitted
evidence that these failings could, in part, be due to the
services Aurora Cares provided to Allenbrooke.  (See ECF No. 27-
4 at 13.)  For example, Sanders has submitted evidence that
Aurora Cares handles "purchasing" for Allenbrooke.  (Id.)  In

15

the Complaint, Sanders alleges that Defendants "[f]ail[ed] to administer the facility in such a manner so as to provide the facility with adequate resources to ensure sufficient non-medical (CNA) staffing and supplies, such as diapers, linens, and towels, to care for all residents, including Charles E. Sanders." (ECF No. 1 ¶ 44(b).)  Taking the allegations in the Complaint as true, as the Court must at this stage, see Air Prods., 503 F.3d at 549, Sanders has sufficiently pled that her claims arose from Aurora Cares' activities in Tennessee.  The second Mohasco requirement is satisfied.  401 F.2d at 381.

Sanders must show that "the acts of the defendant or consequences caused by the defendant [] ha[d] a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."  Id.  "In determining whether the exercise of jurisdiction is reasonable, the court should consider, among others, the following factors: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the [controversy]."  Air Prods., 503 F.3d at 554-55 (citing Intera Corp., 428 F.3d at 618).  "When the first two elements [of Mohasco] are met, an inference arises that the third, fairness, is also present; only the unusual case will not meet

16

this third criterion." <u>First Nat'l Bank of Louisville v. J.W. Brewer Tire Co.</u>, 680 F.2d 1123, 1126 (6th Cir. 1982).

Sanders has satisfied the first two elements of <u>Mohasco</u>. Aurora Cares presents no considerations that would render the exercise of personal jurisdiction over it in Tennessee unreasonable. "Tennessee has interests in resolving this case, not the least of which is to provide a forum for the adjudication of a dispute between a resident and a nonresident that has purposefully availed itself of acting in and causing consequences in Tennessee." <u>Third Nat'l Bank in Nashville v. WEDGE Grp. Inc.</u>, 882 F.2d 1087, 1092 (6th Cir. 1989). The third <u>Mohasco</u> requirement is satisfied. 401 F.2d at 381.

Sanders has satisfied her "relatively slight" burden. <u>Air Prods.</u>, 503 F.3d at 549. The Court has specific personal jurisdiction over Aurora Cares. Aurora Cares purposefully availed itself of conducting business in Tennessee, Sanders's claims plausibly arose from Aurora Cares' actions in Tennessee, and the exercise of jurisdiction over Aurora Cares is reasonable. Non-Facility Defendants' Motion to Dismiss Aurora Cares on jurisdictional grounds is DENIED.

### 2. DTD and D&N

Sanders must show that the Court has personal jurisdiction over DTD and D&N. Both DTD and D&N hold a fifty percent ownership interest in Allenbrooke and Aurora Cares. (ECF No. 1 ¶¶ 6-7.)

Sanders argues that this Court has specific jurisdiction over DTD and D&N because they "receive substantial revenue from Allenbrooke." (ECF No. 27 at 15) (citing Tenn. Code Ann. § 20-2-223(4) for the proposition that jurisdiction is proper over any person who derives substantial revenue from services rendered in Tennessee).[1] Sanders argues that the revenue DTD and D&N received "depleted the resources available to provide staffing, supplies, and care to residents, including Mr. Sanders, which resulted in his injuries and death." (Id.) Sanders also argues that this Court has specific jurisdiction over DTD and D&N because DTD and D&N indirectly own the real estate on which the Allenbrooke facility is located. (Id. at 17) (citing Tenn. Code Ann. § 20-2-223(a)(5) for the proposition that jurisdiction is proper over a person who has an interest in Tennessee real estate).

On their own, DTD and D&N do not have sufficient suit-related contacts with Tennessee to justify the exercise of personal jurisdiction over them under the Mohasco test. 401

---

[1] Although satisfaction of § 20-2-223(4) might appear sufficient on its face for the exercise of personal jurisdiction in Tennessee, the jurisdictional limits of Tennessee law and federal due process are coterminous. Both Tennessee and federal courts are constrained by the Due Process Clause of the Fourteenth Amendment. See Theunissen, 935 F.2d at 1459 (stating that a defect in federal due process considerations "would foreclose the exercise of personal jurisdiction even where a properly construed provision of the long-arm statute would otherwise permit it").

F.2d at 381.  Deriving revenue from a subsidiary that is subject to the jurisdiction of courts in the forum state, without more, is not enough to justify the exercise of personal jurisdiction over the subsidiary's parent.  See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 299 (1980) ("[F]inancial benefits accruing to the defendant from a collateral relation to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State.") (citing Kulko v. Cal. Super. Ct., 436 U.S. 84, 94-95 (1978)).

DTD and D&N's indirect ownership of the real estate on which the Allenbrooke facility is located is not enough to justify the exercise of personal jurisdiction.  This is not a real estate suit.  Sanders does not establish or assert that her claims arose from or relate to DTD and D&N's ownership of the land on which Allenbrooke is located.  Cf. Brookfield Global Relocation Servs., LLC v. Burnley, No. 4:15-cv-2029, 2016 WL 500110, at *3 (N.D. Ohio. Feb. 9, 2016) (exercise of personal jurisdiction comported with due process where defendants owned real property in Ohio and plaintiff alleged that defendant breached a contract to sell that property to plaintiff free of title defects).

Although DTD and D&N do not have sufficient suit-related contacts with Tennessee on their own, the Court has personal jurisdiction over them under another theory.  It is compatible with due process for a court to exercise personal jurisdiction

19

over an entity that would not ordinarily be subject to personal jurisdiction when the entity is substantively legally related to another entity that is subject to personal jurisdiction.  See 4A Charles A. Wright et al., Federal Practice and Procedure § 1069.4 (4th ed. 2020) (collecting cases in which federal courts have exercised personal jurisdiction over defendants through subsidiaries, partnerships, alter egos, related and unrelated companies, successors-in-interest, and companies acting as agents); see generally Lea Brilmayer & Kathleen Paisley, Personal Jurisdiction and Substantive Legal Relations: Corporations, Conspiracies, and Agency, 74 Cal. L. Rev. 1 (1986).

The relevant theory here, which the Sixth Circuit and Tennessee have adopted, is the "alter-ego theory of personal jurisdiction," which "'provides that a non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction.'"  Carrier Corp. v. Outokumpu Oyj, 673 F.3d 430, 450-51 (6th Cir. 2012) (quoting Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide, 545 F.3d 357, 362 (6th Cir. 2008)); accord Gordon v. Greenview Hosp., Inc., 300 S.W.3d 635, 652 (Tenn. 2009).  If a subsidiary's parent company's "separate corporate status is formal only and without any semblance of individual identity, then the subsidiary's

business will be viewed as that of the parent and the latter will be said to be doing business in the jurisdiction through the subsidiary for purposes of asserting personal jurisdiction." 4A Wright et al., supra, § 1069.4.

When analyzing whether the alter-ego theory of personal jurisdiction is satisfied in diversity actions, the Court looks to the forum state's substantive law. See Thomson, 545 F.3d at 362 (applying Ohio law in analyzing personal jurisdiction under alter-ego theory in diversity action); Hilani v. Greek Orthodox Archdiocese of Am., 863 F. Supp. 2d 711, 720-21 (W.D. Tenn. 2012) (same, applying Tennessee law); Gordon, 300 S.W.3d at 653 ("Determining whether one corporation is an alter-ego of another for jurisdictional purposes is controlled by state law.") (citing Jemez Agency, Inc. v. CIGNA Corp., 866 F. Supp. 1340, 1343 (D.N.M. 1994)).

The alter-ego theory applies to LLCs as well as corporations. Allenbrooke, Aurora Cares, DTD, and D&N are LLCs. In Tennessee, an LLC is "a hybrid of partnerships and corporations." State v. Thompson, 197 S.W.3d 685, 692 n.6 (Tenn. 2006) (citing Tenn. Code Ann. §§ 48-201-101, et seq.). The case law governing corporations is equally applicable to the analysis here. See Hatfield, 2018 WL 3740565, at *36-44.

Under Tennessee law, a court has personal jurisdiction over an entity defendant under the alter-ego theory if the plaintiff

21

demonstrates: (1) "that the subsidiary corporation is a sham or dummy"; (2) "that the two corporations are, in fact, identical and indistinguishable"; or (3) "that the subsidiary corporation is merely an instrumentality, agent, conduit, or adjunct of the parent corporation." Gordon, 300 S.W.3d at 653.  The key inquiry is whether "the parent corporation 'exercises complete dominion over its subsidiary, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the corporate entity, as to that transaction, had no separate mind, will or existence of its own.'"  Id. (citing Cont'l Bankers Life Ins. Co. of the S. v. Bank of Alamo, 578 S.W.2d 625, 632 (Tenn. 1979)); see also Restatement (Second) of Conflict of Laws § 52 cmt. b (1971) ("Judicial jurisdiction over a subsidiary corporation will [] give the state judicial jurisdiction over the parent corporation if the parent so controls and dominates the subsidiary as in effect to disregard the latter's independent corporate existence.").

Non-Facility Defendants concede that the Court has personal jurisdiction over Allenbrooke. (ECF No. 16-1 at 12.)  The Court has personal jurisdiction over Aurora Cares.  Personal jurisdiction over DTD and D&N comports with due process if Sanders has adequately pled that DTD and D&N are alter egos of either Allenbrooke or Aurora Cares.  See In re Commodity Exch., Inc., 213 F. Supp. 3d 631, 680 (S.D.N.Y. 2016).

DTD and D&N have no employees.  (ECF No. 16-3 ¶ 34; ECF No. 16-4 ¶ 34.)  Denz and Bennett are respective managers and members of each LLC.  (ECF No. 1 ¶¶ 8-9.)  Sanders has pled that DTD, through its manager Denz, "is responsible for maintaining [Allenbrooke's] finance department, which includes accounts payable, payroll, accounts receivable, general ledger, and financial statement preparation for Allenbrooke."  (Id. ¶ 6.) Sanders has pled that D&N, through its manager Bennett, "is responsible for providing continuous oversight regarding the direct care, contract negotiations, purchasing, capital improvements, employee and resident safety, and human resources for Allenbrooke."  (Id. ¶ 7.)  Sanders has pled that Denz and Bennett "actively manage[] Allenbrooke" and are "manager[s] of Allenbrooke."  (Id. ¶¶ 8-9.)  Sanders has pled that, "at all time[s] material to this lawsuit," Denz and Bennett together "retained exclusive control over the operations of Allenbrooke." (Id.)

Denz is Co-CEO and CFO of Aurora Cares.  (ECF No. 16-3 ¶ 9.) Bennett is Co-CEO of Aurora Cares.  (ECF No. 16-4 ¶ 9.)  As officers of Aurora Cares, Denz and Bennett have "occasionally traveled to Tennessee . . . to ensure that all of the services provided under the administrative services agreement between Allenbrooke and Aurora Cares are performed to the facility's satisfaction."  (ECF No. 16-3 ¶ 13; ECF No. 16-4 ¶ 13.)

23

Denz and Bennett submit affidavits in which they specifically deny Sanders's assertions. (See ECF No. 16-3 ¶¶ 11, 14-22, 26, 30-32, 38; ECF No. 16-4 ¶¶ 11, 14-22, 26, 30-32, 38.) Richie Anderson, Allenbrooke's executive director, and Perry Tidwell, Allenbrooke's former executive director, submit affidavits in which they deny some of Sanders's assertions. (See ECF No. 16-2 ¶¶ 3, 5, 7-8, 10, 14-18, 26; ECF No. 16-5 ¶¶ 3, 5, 7-8, 10, 14-18, 26.)

Courts have asserted jurisdiction over parent companies in situations similar to that here. See, e.g., Third Nat'l Bank in Nashville, 882 F.2d at 1090-92 (court had jurisdiction over parent company when, among other things, parent company was 100% owner of subsidiary, had officers serving on subsidiary's board, subsidiary's board met regularly in Tennessee to review and direct subsidiary's operations, and parent was involved in multiple contracts involving subsidiary); Carrier Corp., 673 F.3d at 450-51 (similar); Brown v. Quince Nursing & Rehab. Ctr., LLC, No. 2:18-cv-2740, 2020 WL 4873670, at *7-10 (W.D. Tenn. Aug. 19, 2020); Hardaway v. Quince Nursing & Rehab. Ctr., LLC, No. 2:19-cv-2464, 2020 WL 4106440, at *7-10 (W.D. Tenn. July 20, 2020), reconsideration denied, 2020 WL 4507327 (W.D. Tenn. Aug. 5, 2020); Jones v. Arcadia Nursing & Rehab. Ctr., L.L.C., No. 15-cv-2910, 2017 WL 1193735, at *3-4 (W.D. La. Mar. 29, 2017), reconsideration denied, 2017 WL 6816738 (W.D. La. May 24, 2017)

(finding exercise of personal jurisdiction over DTD and D&N appropriate in circumstances similar to those here).

There is sufficient evidence in the record for Sanders to meet her "relatively slight" burden to establish an alter-ego theory of personal jurisdiction over DTD and D&N.  See Air Prods., 503 F.3d at 549; Gordon, 330 S.W.3d at 652; see also Malone, 965 F.3d at 504-05 (where court decided motion to dismiss for lack of jurisdiction on written submissions alone, plaintiffs "needed only to make a prima facie showing, which . . . they did through their complaint").  That finding is appropriate even given the contradicting evidence Non-Facility Defendants submit. See Serras, 875 F.2d at 1214 (where plaintiff meets her burden to make a prima facie showing of personal jurisdiction, "the motion to dismiss should be denied, notwithstanding any controverting presentation by the moving party") (quotation marks and citation omitted); Theunissen, 935 F.2d at 1464 (same). The Court has personal jurisdiction over DTD and D&N under the alter-ego theory of personal jurisdiction. [2]   Non-Facility Defendants' Motion to Dismiss DTD and D&N on jurisdictional grounds is DENIED.

---

[2] Because Sanders has met her burden to make a prima facie showing of personal jurisdiction under the alter-ego theory, the Court need not reach her argument that personal jurisdiction is appropriate under the "conspiracy" theory of jurisdiction.  (See ECF No. 27 at 12-13.)

In their jurisdictional arguments, both parties rely on the Tennessee Court of Appeals' decision in Hatfield.  See 2018 WL 3740565.  The same Non-Facility Defendants were defendants in Hatfield.  See id. at *1.  After the trial court had denied Non-Facility Defendants' motions to dismiss, the case went to trial and a jury awarded the plaintiff substantial damages.  Id. at *1-3.  On appeal, Non-Facility Defendants asked the appellate court to determine, inter alia: (1) whether the trial court erred in failing to dismiss DTD, D&N, Denz, and Bennett for lack of personal jurisdiction; and (2) whether the trial court erred in considering Allenbrooke, Aurora Cares, DTD, D&N, Denz, and Bennett as alter egos by allowing the jury to pierce the corporate veil and disregard corporate formalities among the separate individuals and entities.  Id. at *4-5.

Addressing personal jurisdiction, the trial court in Hatfield found that DTD, D&N, Denz, and Bennett had sufficient minimum contacts with Tennessee to justify the exercise of personal jurisdiction.  Id. at *5-7.  The trial court alternatively found that DTD, D&N, Denz, and Bennett had waived their jurisdictional defense "when [they] sought affirmative relief from the Court" by filing several motions and orders unrelated to jurisdiction.  Id.  The appellate court affirmed the trial court's finding on the waiver issue and did not reach the trial court's finding that DTD, D&N, Denz, and Bennett had

26

minimum contacts with Tennessee.  Id. at *6-8.  The Tennessee Court of Appeals' opinion in Hatfield dealt with different issues in a different posture than the issues here.  It does not inform the Court's evaluation of Non-Facility Defendants' jurisdictional arguments.

Addressing alter ego and veil-piercing issues, the Hatfield appellate court considered the sufficiency of the jury's findings on liability.  See id. at *36-42.  Standards of review and analyses of personal jurisdiction differ from issues of liability.  Although illustrative, Hatfield does not assist the Court in evaluating the alter ego arguments presented here in the context of personal jurisdiction.

### 3.   Denz and Bennett

The Court has personal jurisdiction over Denz and Bennett under the Mohasco test.  401 F.2d at 381.  Denz and Bennett state they have traveled to Tennessee to "ensure that all of the services provided under the administrative services agreement between Allenbrooke and Aurora Cares are performed to the facility's satisfaction."  (ECF No. 16-3 ¶ 13; ECF No. 16-4 ¶ 13.)  Sanders has pled that the services Aurora Cares provided, and the decisions Denz and Bennett made about those services, led to the injuries that Charles sustained.  (See ECF No. 1 ¶ 44(a)-(w).)  Sanders has pled that other administrative decisions Denz and Bennett made about the management of

Allenbrooke led to the injuries that Charles sustained.  (Id. ¶¶ 47-56.)  Sanders makes a prima facie showing that Denz and Bennett have purposefully availed themselves of the privilege of acting in Tennessee, that Sanders's claims arise from their actions in Tennessee, and that the exercise of personal jurisdiction over Denz and Bennett is reasonable.  See Mohasco, 401 F.2d at 381.

Non-Facility Defendants argue that the Court cannot exercise jurisdiction over Denz and Bennett in their individual capacities because they are protected from suit by the fiduciary shield doctrine.  (ECF No. 16-1 at 12-13.)  The Tennessee Court of Appeals has recognized the fiduciary shield doctrine, which precludes jurisdiction over individuals who act exclusively as corporate officers on behalf of a bona fide corporation.  See Boles v. Nat'l Dev. Co., 175 S.W.3d 226, 251 (Tenn. Ct. App. 2005) (citing Stuart v. Spademan, 772 F.2d 1185, 1197 (5th Cir. 1985)); accord Balance Dynamics Corp. v. Schmitt Indus., Inc., 204 F.3d 683, 697 (6th Cir. 2000).  Non-Facility Defendants contend that the contacts Denz and Bennett had with Tennessee were carried out solely in their corporate rather than their individual capacities and that they are protected from suit by the fiduciary shield doctrine.  (ECF No. 16-1 at 12-13.)

The fiduciary shield doctrine does not provide blanket protection to corporate officers.  "In a diversity action, the

law of the forum state dictates whether personal jurisdiction exists, subject to constitutional limitations." <u>Intera Corp.</u>, 428 F.3d at 615.   Because Tennessee's long-arm statute is coterminous with federal due process, <u>Parker</u>, 938 F.3d at 839; <u>First Cmty. Bank</u>, 489 S.W.3d at 384, federal due process limitations govern the fiduciary shield analysis.   <u>See</u> <u>Simplex Healthcare, Inc. v. Marketlinkx Direct, Inc.</u>, 761 F. Supp. 2d 726, 730-33 (M.D. Tenn. 2011).   Courts have questioned whether the Due Process Clause of the Fourteenth Amendment -- a "constitutional limitation[]" -- implicates the fiduciary shield doctrine.   <u>See</u> <u>id.</u> (collecting cases); <u>see also</u> <u>Johnson v. Gray</u>, No. 2:10-cv-0163, 2011 WL 13228171, at *6 (E.D. Tenn. Sept. 16, 2011) (rejecting the application of the fiduciary shield doctrine as applied to a Tennessee breach-of-contract claim); <u>MCA Recs., Inc. v. Highland Music, Inc.</u>, 844 F. Supp. 1201, 1203 (M.D. Tenn. 1993) ("Where the forum state's long-arm statute is coextensive with the full reach of due process, the fiduciary shield doctrine is inapplicable."); 3A William M. Fletcher, <u>Fletcher Cyclopedia of the Law of Corporations</u> § 1296.20 (2019) ("The fiduciary shield doctrine is not available where the forum state's long-arm statute is coextensive with the full reach of due process.") (collecting cases).

The Sixth Circuit has, as a practical matter, read the fiduciary shield doctrine out of existence for purposes of personal jurisdiction:

> While it is true that jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation, we hold that the mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants. Hence, where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; i.e., whether she purposely availed herself of the forum and the reasonably foreseeable consequences of that availment.

Balance Dynamics, 204 F.3d at 698 (quotation marks and citations omitted).  The Supreme Court's prior holdings comport with this understanding.  See Calder v. Jones, 465 U.S. 783, 790 (1984) ("[Defendants'] status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum State must be assessed individually."); Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984) (citing Calder for "reject[ing] the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity").  This reading is consistent with the practical application of the doctrine in Tennessee state courts. See Simplex, 761 F. Supp. 2d at 731 ("No Tennessee state court has ever applied the doctrine to bar jurisdiction.").

30

Denz and Bennett's assertions that they were acting solely in their official capacities is not determinative for purposes of jurisdiction.  The question is whether they were "actively and personally involved in the conduct giving rise to the claim[s]," regardless of the capacity in which they were acting. Balance Dynamics, 204 F.3d at 698.  Because Denz and Bennett were plausibly "actively and personally involved in the conduct" giving rise to Sanders's claims, and because asserting jurisdiction over them would comport with the "traditional notions of fair play and substantial justice," they are not protected by the fiduciary shield from the assertion of jurisdiction.  Balance Dynamics, 204 F.3d at 698; see Nat'l Can Corp. v. K Beverage Co., 674 F.2d 1134, 1137 (6th Cir. 1982) (finding jurisdiction over defendant in his individual capacity when he was president of corporation, traveled to forum state once a month to oversee company business, and executed contractual agreement in forum state); see also Flynn v. Greg Anthony Constr. Co., 95 F. App'x 726, 740-41 (6th Cir. 2003) (holding that the vice-president and the president of two corporations were subject to jurisdiction in their individual capacities because of "their involvement in orchestrating the affairs" of the companies' business in forum state).  Non-Facility Defendants' Motion to Dismiss Denz and Bennett on jurisdictional grounds is DENIED.

31

### B.    Failure to State a Claim

Non-Facility Defendants argue that Sanders fails to state a claim for which relief can be granted because: (1) the THCLA prohibits Sanders from pursuing health care liability claims against Non-Facility Defendants; (2) the Tennessee courts have established that DTD, D&N, Denz, and Bennett cannot be held directly or vicariously liable for the actions of Aurora Cares or Allenbrooke; (3) there can be no personal liability for an owner, officer, or member of a Tennessee LLC; and (4) there can be no personal liability for a member or agent of a New York LLC.  (ECF No. 16-1 at 13-20.)

### 1.    THCLA

Non-Facility Defendants argue that the THCLA prohibits Sanders from pursuing health care liability claims against them. (ECF No. 16-1 at 13-14; ECF No. 32 at 3-5.)  They argue that the THCLA allows health care liability actions only against a "'licensee, the licensee's management company, the licensee's managing employees, or an individual caregiver who provided direct health care services, whether an employee or independent contractor.'"  (ECF No. 16-1 at 13) (quoting Tenn. Code Ann. § 29-26-102(a)).  Non-Facility Defendants argue that they do not meet any of those definitions.  (Id.)  Non-Facility Defendants argue that they are "passive investors" who cannot be sued under the THCLA.  (Id.)  Sanders argues that she has properly pled

32

that Non-Facility Defendants are amenable to suit under the THCLA or, alternatively, that she has sufficiently pled common law negligence claims against them.  (ECF No. 27 at 22-25.) Sanders's first argument is sufficient.

Non-Facility Defendants submit four declarations with their Motion to Dismiss and rely on them to support their arguments. (ECF Nos. 16-2, 16-3, 16-4, 16-5.)  Although dismissal for lack of personal jurisdiction is governed by Rule 12(b)(2), dismissal for failure to state a claim for which relief can be granted is governed by Rule 12(b)(6).  Under Rule 12(b)(6), a court normally "may not consider matters beyond the complaint."  Hensley Mfg., 579 F.3d at 613.  A court may consider such matters if they are "referred to in [the] complaint and central to the [plaintiff's] claim."  Armengau, 7 F. App'x at 344.  The declarations Non-Facility Defendants submit were not referred to in the Complaint and are not central to Sanders's claims.  The Court will not consider them in evaluating Non-Facility Defendants' arguments about whether Sanders has stated claims upon which relief can be granted.

The THCLA provides that only certain individuals and entities may be sued under it:

> (a) Except as provided in this section, a health care liability action against a licensee may be brought only against the licensee, the licensee's management company, the licensee's managing employees, or an individual caregiver who provided direct health care

33

> services, whether an employee or independent
> contractor. A passive investor shall not be liable
> under this part. A health care liability action
> against any other individual or entity may be brought
> only pursuant to subsection (b).[3]

Tenn. Code Ann. § 29-26-102(a). A "licensee" is defined by the

statute as "a health care provider licensed, authorized,

certified, registered, or regulated under title 33, 63, or 68

that is legally responsible for all health care services

provided." Id. § 29-26-101(a)(3). "Management company" is

defined as:

> [A]n individual or entity that contracts with, or
> receives a fee from, a licensee to provide any of the
> following services to or for a licensee:
>
> > (A) Directly hiring or firing the administrator
> > or other managing employees of the licensee;
> >
> > (B) Directly controlling or having control over
> > the staffing levels at the licensee;
> >
> > (C) Directly controlling the budget and
> > expenditures of the licensee; or
> >
> > (D) Directly implementing and enforcing the
> > policies and procedures of the licensee.

Id. § 29-26-101(a)(4)(A)-(D). A "passive investor" is "an

individual or entity that has an ownership interest in a licensee

but does not directly participate in the day-to-day decision

making or operations of the licensee." Id. § 29-26-101(a)(5).

A licensee's "managing employee" is not defined in the statute.

Non-Facility Defendants argue that Sanders has not pled

---

[3] Subsection (b) is not relevant here.

sufficient facts to sustain her claims against them under the THCLA.[4]  (ECF No. 16-1 at 13-14; ECF No. 32 at 3-5.)

Sanders has pled that Aurora Cares is Allenbrooke's "management company" and that her claims arose out of "business conducted by Aurora Cares, LLC in the operation, management, and/or control of Allenbrooke."  (ECF No. 1 ¶ 5.)  She has pled that DTD, through its manager and majority member Denz, "is responsible for maintaining the nursing home's finance department, which includes accounts payable, payroll, accounts receivable, general ledger, and financial statement preparation for Allenbrooke."  (Id. ¶ 6.)  She has pled that D&N, through its manager and majority member Bennett, "engaged in contact with facilities, made on-site visits, and is responsible for providing continuous oversight regarding the direct care, contract negotiations, purchasing, capital improvements, employee and resident safety, and human resources for Allenbrooke."  (Id. ¶ 7.)

Sanders has pled that Denz "actively manages Allenbrooke . . . and is the manager of Allenbrooke"; "retain[s] exclusive control over the operations of Allenbrooke"; and "is responsible for maintaining the finance department, which includes accounts

---

[4] The parties do not dispute that Allenbrooke is a "licensee" as defined by the THCLA.  (See ECF No. 16-1 at 13-14; ECF No. 32 at 3-5.)

payable, payroll, accounts receivable, general ledger, and financial statement preparation for Allenbrooke." (Id. ¶ 8.) She has pled that Bennett "actively manages Allenbrooke . . . and is the manager of Allenbrooke"; "retain[s] exclusive control over the operations of Allenbrooke"; and "is responsible for maintaining contact with Allenbrooke . . . and performing on-site visits, providing continuous oversi[ght] of the operations of the facility . . . and controlled the financial operations of Aurora Cares LLC, Allenbrooke Nursing and Rehabilitation Center, and D&N, LLC." (Id. ¶ 9.)

Sanders has pled that Non-Facility Defendants' failure to adequately perform their duties led to Charles's injuries. (See id. ¶¶ 44(a)-(w), 51(a)-(h).) Sanders's pleading is sufficient. Taking her factual allegations as true, as the Court must at this stage, see Iqbal, 556 U.S. at 678, Sanders has adequately pled that Non-Facility Defendants fall within the THCLA's definition of "management company" and/or "managing employees." Tenn. Code Ann. § 29-26-101(a)(4)(A)-(D). Non-Facility Defendants' Motion to Dismiss on this ground is DENIED.

### 2. **Hatfield**

Non-Facility Defendants argue that DTD, D&N, Denz, and Bennett must be dismissed because they cannot be held directly or vicariously liable given the Tennessee Court of Appeals' decision in Hatfield, 2018 WL 3740565. (ECF No. 16-1 at 15-17.)

36

Hatfield is inapposite at this stage.  In Hatfield, the court held that DTD, D&N, Denz, and Bennett could not be held directly liable for injuries the plaintiff sustained at Allenbrooke because the evidence presented to the jury was insufficient to support a finding of liability.  See 2018 WL 3740565, at *31 ("We cannot agree that the jury had material evidence to find direct liability against Mr. Denz, Mr. Bennett, DTD, or D&N in this case.").  That holding has no bearing at the motion-to-dismiss stage, where the decision turns on the pleadings.  The record in this case is not fully developed.  Evidence presented at summary judgment or at trial may be sufficient to support a finding of direct liability against DTD, D&N, Denz, or Bennett. See id. at *31 ("[I]n order to be directly liable . . . each [Non-Facility Defendant] must have been involved in the day-to-day operations of the facility.").  Sanders has adequately pled facts sufficient to survive a motion to dismiss.

In Hatfield, the court also held that DTD, D&N, Denz, and Bennett could not be held vicariously liable for injuries caused by Allenbrooke or Aurora Cares because, under the alter-ego theory on which the jury was instructed, there was insufficient evidence to support a finding of liability.  See id. at *39-42. That holding has no bearing at this stage.  Evidence presented at summary judgment or at trial may be sufficient to support a finding of vicarious liability against DTD, D&N, Denz, and

Bennett.  See id. at *36-39 (holding that shareholders and parents of subsidiaries may be held vicariously liable where the corporate veil is pierced).  Sanders has adequately pled facts sufficient to survive a motion to dismiss.  Non-Facility Defendants' Motion to Dismiss on this ground is DENIED.

### 3.  Limited Liability

Non-Facility Defendants argue that DTD, D&N, Denz, and Bennett must be dismissed because there can be no personal liability for an owner, officer, or member of a Tennessee LLC or for a member or agent of a New York LLC.  (ECF No. 16-1 at 18-22.)  That argument fails.  LLC members may be held liable where the corporate veil is pierced.  See Underwood v. Miller, No. M2019-00269-COA-R3-CV, 2020 WL 730881, at *3 (Tenn. Ct. App. Feb. 13, 2020) (citing Edmunds v. Delta Partners, L.L.C., 403 S.W.3d 812, 829 (Tenn. Ct. App. 2012)); Adams v. Adient US LLC, No. 1:18-cv-1179, 2019 WL 1569353, at *3 (W.D. Tenn. Apr. 11, 2019); Grammas v. Lockwood Assocs., LLC, 944 N.Y.S.2d 623, 625 (N.Y. App. Div. 2012) ("A party may seek to hold a member of an LLC individually liable despite this statutory proscription by application of the doctrine of piercing the corporate veil.").  Sanders has adequately pled facts that, taken as true, could support application of the veil-piercing doctrine.  Non-Facility Defendants' Motion to Dismiss on this ground is DENIED.

**V.    Conclusion**

For the foregoing reasons, Non-Facility Defendants' Motion to Dismiss is DENIED.

So ordered this 22nd day of September, 2020.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE